The next case this morning, United States v. Case. OK, I see two attorneys. Raise your hand if you can hear me. It's Mr. Allen is the appellant and I gather that is you, Mr. Horace, if I'm pronouncing your name correctly. You're first. That's correct. Thank you. May it please the court. I am Joe Horace and I represent the appellant Brooks case in this matter. I'd like to request two minutes for rebuttal. OK. This appeal is about pervasive misstatements by the government in closing during the trial in this matter back in June of 2020. About Mr. Case's right to confront his witness or witness against him, which was denied by the court. The defendant respectfully requested this court overruled the district court in its denial of the Rule 29 motion. And an alternative grant him a new trial on the misconduct by the government. As the court may be aware, this trial was the first in the District of Idaho during the pandemic in June 2020. So many of the procedures or all the procedures the CDC had recommended were followed by the court, including and most importantly, in this case, the wearing of face coverings by all people, including the defendant and the defendant's attorney. The basic fact is wear face masks while they were testifying. The witnesses did not. They were behind plexiglass while they were testifying. As they walked up, they were able to remove their masks once they're behind the plexiglass. Basic facts that the government alleged is there was a drug deal that occurred at a home in Caldwell, Idaho, on April 25th, 2019. CHS, Confidential Human Source, was hired by a task force to purchase methamphetamine and agreed to do so from a person named Vanessa Compos in Caldwell, Idaho. The government alleged that Brooke's case, my client, was a source of supply, brought methamphetamine with him, provided it to Vanessa Compos, in which case she provided it to the confidential human source. At trial, Vanessa Compos was called by the government. Again, she was the co-defendant in the case. She said she acted alone. She was the only one that participated in the drug deal. The CHS also testified. She stated in court that she could not identify Brooke's case as a source of supply. There is video, and I believe the government did provide that, but that does not show Brooke's case as a source of supply. Her argument is several-fold. First, the court erred in denying the Rule 29 motion for acquittal. The identity of the source of supply is the biggest point in this matter, and we don't believe the government was able to prove its case after its close of evidence to even allow the case to go to the jury. Again, I reiterate, the CHS never identified Brooke's case as a source of supply. The co-defendant said she acted alone. At that point, the court should have… It's a thin case. I mean, admittedly, this is a triumphal case, but you have the officer who says that this vehicle arrives at this time, and the fellow goes in, and then after he leaves, he follows him, and he takes a picture, so he establishes the person who went in. And then you have the source who couldn't identify the person say that the person who arrived went with Campos around the corner, and then came back with the drugs. Isn't that enough to create a circumstantial inference that the person the officer saw go in is the one who supplied the drugs? It could be, Your Honor. However, there's a couple issues with that. First, the video timing of the incident was not in lockstep with what the officer reported at the time. Additionally, the officer left the scene for at least nine minutes, and was posted up about 300 yards once he came back and took photos. So we are not disputing that Brooke's case arrived at the scene. What we're disputing is he was the source of supply, and the government was able to prove the identity of him as the source of supply. But we do know that he arrives at the scene, and after he arrives at the scene, there is a white man, medium build. They go out of sight. The confidential source can't identify him personally, but does say, well, white man, medium build. I mean, there's a fair amount of evidence to connect him. We'd agree, Your Honor, and I believe, you know, the court did, the district court did agree. It was a very thin case. However, we believe our better argument is more about the misstatements at closing from the government. I would like to address that if possible. Thank you. So during the closing, the government made some misstatements about what the CHS had said. First, again, the identity is one of the biggest issues in this matter, the identity of that source of supply. The government, in its closing, makes multiple statements about why the CHS could not identify the source of supply. And some of those we can see or find that she was only in the house for five minutes with the CHS. She didn't know him. She'd never met him before. But at the end of those statements, during closing, the government makes the following statement. And when she came into the court and was asked, do you recognize the person in the courtroom, she looked at a room full of people with half of their faces covered. We think that was impermissible. It shifted the burden for the government, and it was confusing for the jury. The testimony wasn't that the CHS couldn't identify the source of supply because he was wearing a mask. It was that she had never met him and didn't identify him in the courtroom as the source of supply. So by allowing the jury to hear that in closing, the jury was given this impermissible idea that it's possible that the CHS would have identified him if he wasn't wearing a mask. And you can compare and contrast that to the task force officer who was allowed to see Mr. Case remove his mask during court. We don't believe the government should have it both ways. He either has to remove his mask when being identified or not. And so impermissibly, the government utilized that to make the implication to the jury that had Mr. Case not been wearing a mask for the CHS, the CHS may have been able to identify him. Additionally, the government made some statements regarding... How is that harmful? I mean, even if it's an error, doesn't the officer's testimony establish sort of the, you know, the chain of custody of who went in and came out and says that it's Case? The officer did testify that the vehicle came. He followed it, ran the plates, and then took pictures of Case. However, by giving this additional information to the jury that the CHS may have been able to identify the source of supply, had everyone's faces not been covered, then the jury is allowed to make that assumption, okay, different than what the testimony was, different with the evidence of the CHS. Because if he hadn't mentioned the face mask, then the jury would have concluded that someone on the stand who saw someone for four minutes a year ago, they would have recognized him. Isn't it a more natural inference that there's no way that she was going to recall who she saw? I think that's a possible inference the jury could make, that had he not been wearing the mask, that the CHS would have been able to identify him. Let me come back to this. So what's supposed to happen in your view? Is the judge supposed to say, would everybody in the courtroom please take off their mask for a minute so she can look at everybody? The judge is certainly not supposed to say, would the defendant please take his mask off? At that point, that would be an impermissible pointing at the defendant. What's the trial judge supposed to do or what's the prosecutor supposed to ask for in your view? Certainly, Your Honor. And in fact, the judge did ask Mr. Case, so the government did ask Mr. Case to remove his mask when he was being identified by the task force officer. So my point is... And only Mr. Case, is that right? Excuse me? And only Mr. Case, is that right? Only Mr. Case, when the task force officer, I mean, I can read the quote directly, but... But you're not objecting to that? I might have objected to that in your shoes. Yeah. Well, I think it's, you know, and that's the hard part since this is the first case out of the gates. So not having it both ways, you know, when it's obviously it was negative for the government with the CHS, and so they chose to not do that with her. However, with the task force officer, they certainly did choose to do that. And because it would be positive for their case. And then commenting on it to the jury and bolstering their case by saying, it's possible had his face not been covered, she would have identified him, which wasn't the direct quote, however, but that's the implication that was made. Okay. That... Okay. Well, listen, we've taken you pretty far down. Let's hear from the other side, and then we'll give you a chance to respond. Thank you, Your Honor. May it please the court. My name... Thank you, Your Honor. May it please the court. My name is Alexis Klempel, and I am a special assistant U.S. attorney with the District of Idaho. This court should affirm the defendant's conviction because the evidence at trial amply supported the verdict, and any error that occurred was harmless and did not affect the defendant's substantial rights. I'd like to first address the allegations of error in closing and discuss first the comment I most wish that I had said differently, that being the comment about faces being covered, why I wish I hadn't said it but why it does not require reversal. Out of context and viewed in a negative light, that comment could be construed to suggest that, as counsel has argued, that the informant would have identified the defendant at trial but for his wearing a mask. I wish I hadn't said that comment because it wasn't helpful to the jury, and there's also that slight risk of drawing an incorrect inference from the comment. The informant's testimony was that she would not recognize the source again if she saw him, so it would have been better to simply argue why it was understandable that she would not recognize this person in general rather than why she specifically did not recognize him at trial. However, this court must... Can you remind me? I just don't remember this from the transcript. When you... Well, was the confidential source asked when she was on the stand? Can you look around the courtroom and tell us if you recognized the person that came to the house? Yes, Your Honor. I asked her if she recognized anyone in the courtroom. She said no. There was then a brief recess, and I'm questioning her again after the recess. I asked her if she thought she would recognize the source if she saw him again, and she said no. Got it. Okay. Thank you. Thank you, Your Honor. Why was the... There were two requests to identify, one to the officer and one to her. Why was it done differently? Why was he asked to remove his mask for one and it was left on for the other?  Your Honor, as to the informant's testimony, so she had testified that if she saw the source again, she would not recognize him. So as Judge Fletcher noted, it would seem very extremely suggestive to then say, well, can the defendant remove his mask? What about this guy, the only guy without a mask? Do you recognize him? Isn't that exactly what you did for the officer? No, Your Honor. Because the testimony leading up to the identification in court with Detective Bonner was very different. So Detective Bonner had testified that he observed this individual, that he observed the vehicle he was driving and ran the license plate, and that the license plate came back that the registered owner of the vehicle was Brooke's case. Detective Bonner testified that he was able to view a photograph of Brooke's case on his mobile computer in his vehicle, and he was able to confirm that the driver of the vehicle matched that photograph. I understand you have very good independent evidence that the officer is able to establish what I call the chain of custody for Mr. Case being the person going into the house. But you did an in-court identification, and you did exactly the suggested procedure where you said, just Mr. Case, take off the mask. Do you see him in the courtroom? Well, it's the guy who was just ordered to take off his mask. Did it happen like that, or am I getting this wrong? He was the only one who removed his mask, Your Honor. However, it was not overly suggestive to do that with Detective Bonner because he had already testified that it was Brooke's case. He had named him. He had indicated that he matched his photo. He had also taken surveillance photos, some of which had already been admitted. And then more photographs that he took during surveillance after he followed Mr. Case to the gas station were also admitted, which corroborated his in-court identification to the jury and showed that he did, in fact, know who this person was. He wasn't just picking out the person named the defendant in trial. And there was no objection, apparently, to that means of identification by that officer. That's correct, Your Honor. This court should consider the comment about the face coverings in the context of the entire trial, including defense counsel's argument in closing. In closing argument, the defense argued that the informant did not identify the defendant in court as the source, that she sat there under oath and could have at any time looked over at Brooke's case and said, that's him, he did it. And the fact that she didn't do that was, quote, extremely compelling that he was not the source. So in an effort to respond to that argument, I was attempting to argue that, of course, the source, or I'm sorry, the informant did not identify the source in court. As Judge Collins pointed out, there were a number of reasons for that. However, given her testimony that she would not recognize this person if she saw him again, it would have been better to simply limit my argument to why it was understandable in general that she would not recognize the source, rather than why she did not recognize someone in the courtroom. Can I ask you an irrelevant question, but just out of curiosity? As a matter of trial strategy, why did you ask the source to look around the courtroom if you, I mean, she presumably told you that she wasn't going to be able to recognize the person? In trial preparations, I had asked her if she would recognize this person and she didn't know, or if she could describe him, she wasn't sure. So I asked her in court if she recognized someone, and when she said no, I later clarified, I don't believe I even talked with her during that recess, but I clarified with her, well, would you recognize this person if you saw them again? And she said no, she would not. So for that reason, it seemed both overly suggestive to ask the defendant to remove his mask No, no, no, I'm sorry, I just mean, why did you ask her at all? Like, why didn't you bring that up? Well, I try to be as forthright as possible. I think there are some questions that can look weirder to not ask than to ask and get an answer that's neither helpful or unhelpful. And my guess is the defense might have asked the witness that question if you hadn't. May have, Your Honor, yes. The district court was able to consider this mask face covering comment in the defense's written motion for new trial after the fact. That's at the beginning of the record, the court's opinion on that. The district court found that it was neither improper nor prejudicial. However, even if this court were to find that the comment was error, it was not plain error, nor did it affect the defendant's substantial rights. That is, there is not a high probability of a different outcome. That is because the informant, again, was very clear in her testimony that she would not recognize this person. But her testimony was also clear that the source for this drug deal was the driver of that GMC Envoy that arrived at the residence. And Detective Bonner was very clear in his testimony that that driver was the defendant, Brooks Case, and that he was also the registered owner of the vehicle. The court also gave the general instruction to the jury that the arguments of counsel are not evidence, and the jury is presumed to follow those instructions. So those adequately neutralized any error in closing. Turning to the next claim of error in closing, this court should review for abuse of discretion the argument in rebuttal that the informant, quote, told you the defendant and Vanessa went around the corner because the defense objected to that comment at the time of trial. However, this court should also give deference to the trial court's handling of that, which was to remind the jury that it's up to them to determine what the evidence proved, and if the prosecutor's argument was not supported by the evidence, they should disregard the argument. Again, that instruction adequately cured the error that the district court found occurred. I'd like to address the sufficiency of the evidence briefly. There are four main facts which support the jury's verdict and a finding of guilt. While the case was circumstantial, and as the panel has acknowledged, the evidence was thin, it was ample. And when those circumstances are pieced together, they make clear that the most reasonable conclusion to draw is that the defendant, in fact, participated in this drug deal. First, Vanessa Campos didn't have the drugs with her when the informant arrived. She was waiting for her source. Second, while she was waiting, she described the source's vehicle as a dark-colored envoy. Third, the defendant arrived at the location of the drug deal driving a dark-green GMC envoy, which was registered to him. And fourth, he arrived just before the informant testified that the source and Vanessa Campos went around a corner in the house, and when they came back out, Vanessa Campos gave her the drugs. If there are no further questions from the panel, I'll conclude. Because no error occurred that was so gross as to probably prejudice the defendant or affect his substantial rights, and because the evidence at trial amply supported the verdict, this court should affirm the defendant's conviction. Thank you. Okay, and I have a question that's really not relevant at all. Ordinarily, I'm accustomed to people coming from the attorney's office as identifying themselves as an assistant. And AUSA, you're a special AUSA. I am, Your Honor. What's the special doing? Your Honor, I've been employed by a county, and I was cross-deputized working out of the U.S. attorney's office for about two and a half years, including the timeframe for this trial. I recently moved over to the civil division of the county that employs me, but I was fortunately able to keep this appeal. It got set for oral argument shortly before I made that transition, so I've been working two jobs for the last few weeks. I see. Okay, well, thank you, because I had not run into that designation before. Thank you very much. Let's put two minutes on the clock for rebuttal. Thank you, Your Honor. May I proceed? Yes, please. Thank you. Your Honor, just briefly, I would like to follow up with our last argument regarding the denial of defense right to confront and cross-examine a witness, and that would be Vanessa Campos. The government, in its briefs, stated that the defendant had waived that argument, stating that the defense was given the opportunity to cross-examine later down the road, when, in fact, that's not really the case. The government sought to strike the testimony when she said she wouldn't testify, and you objected to that. So you could have all this issue would have gone away if the testimony had just all been stricken, because then your opportunity to cross would have been honored by tossing it out, but you said, no, let's keep what she said, even though you didn't get to cross it. That's correct. We believe we could have bolstered her testimony, but she was detained by the U.S. Marshals, taken out, as well as the jury. Later, within – If you turn down a remedy that would have cured this violation, how can you now object that the violation wasn't cured? Turn down the remedy at the time the court removed her from the courtroom? Of striking the testimony. Striking the testimony would have cured any confrontation clause issue. Jury is instructed to disregard everything she said. And you said no, right? Respectfully, Your Honor, the U.S. attorney did ask that she be treated as a hospital witness, and we believe we could have bolstered more of what she said for cross-examination. We were just never provided the opportunity. So obviously what she stated was helpful to us, and we could have further developed that had the court at least given us the opportunity. Do you think the court was wrong in saying, you know, there's no point in asking more questions when you keep saying I won't testify? She did state she made substantive statements, multiple substantive statements, obviously that the government did not like or appreciate. So not being able to at least not have the opportunity to cross-examine is what we're arguing. Thank you. And if there's no further questions, we would just request that the court, number one, overrule the district court on the Rule 29 motion for acquittal, and number two, in the alternative, provide Mr. Case the opportunity for a new trial based on the misstatements of the government. Thank you. Okay. Thank both sides for their helpful arguments. United States v. Case, submitted for decision.
judges: W. Fletcher, Watford, Collins